**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: OMER L. RAINS,

OMER L. RAINS,
                              *Appellant,*

              v.

KENNY W. FLINN,
                              *Appellee.*

No. 03-16538

D.C. No.
CV-03-00388-GEB

In re: D.W. AND O.L. RAINS,

OMER L. RAINS,
                              *Appellant,*

              v.

KENNY W. FLINN,
                              *Appellee,*

              and

OFFICE OF THE UNITED STATES
TRUSTEE,
                              *Trustee.*

No. 04-15743

D.C. No.
CV-03-01524-GEB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
February 8, 2005—San Francisco, California

Filed November 8, 2005

15207

Before: J. Clifford Wallace, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson

## COUNSEL

George C. Hollister, Sacramento, California, for debtor-appellant Omer L. Rains.

Gregory J. Hughes, Roseville, California, for trustee-appellee Kenny W. Flinn.

**OPINION**

RAWLINSON, Circuit Judge:

These consolidated appeals arise from the bankruptcy court's approval of, and subsequent enforcement of, a settlement agreement resolving adversary proceedings brought by the trustee-appellee and a creditor against the debtor-appellant. Because we conclude that the settlement agreement was valid, and that enforcement of the agreement was proper, we affirm the district court's decision upholding the approval of the settlement agreement. Although the district court erred in ruling that the appeal of the judgment enforcing the settlement was untimely, we affirm the entry of judgment in favor of the trustee.

## I.  BACKGROUND

### A.  The Settlement Agreement

Omer L. Rains is an attorney and a debtor in bankruptcy. Kenny W. Flinn is the bankruptcy trustee. In September 2002, the bankruptcy court appointed a mediator in connection with adversary proceedings involving Rains, Flinn, and a creditor. A settlement conference was held on September 23, 2002, and after a full day of negotiations, the parties reached a settlement agreement (settlement or agreement). The agreement was reduced to writing and the parties (including Rains) and their attorneys signed it.

Pursuant to the terms of the settlement, Rains and his wife, also a debtor, agreed to pay the trustee $250,000 by March 31, 2003. Upon timely payment, the trustee and the creditor

agreed to dismiss the adversary proceedings and withdraw their objections to claimed exemptions from the bankruptcy estate. Among the exemptions claimed by Rains was his interest in a retirement plan sponsored by the American Bar Association (retirement plan). The agreement alternatively provided that:

> [i]n the event that payment is not timely made by the defendants, judgment shall be entered denying the debtors' discharge and an order shall be entered denying the debtors' exemption claim to the ABA pension plan up to the amount of $250,000 unless before the due date for payment the debtors have posted an irrevocable standby letter of credit . . . (or other instrument or collateral acceptable to the trustee and to [the creditor]) to support the $250,000 payment.

## B. The First Appeal (Court Approval of the Settlement)

Immediately following the conclusion of the mediation, Rains drove himself to a hospital emergency room where he was admitted and diagnosed with a ruptured cerebral aneurysm, sub-arachnoid hemorrhage, and stroke. Rains underwent surgery the next day and was placed in the intensive care unit for approximately one month prior to his eventual discharge from the hospital. Rains claims to have no recollection of the events preceding his hospitalization.

Sometime after Rains underwent medical treatment, counsel for Rains informed the trustee's attorney that Rains did not intend to comply with the settlement agreement. This development prompted the trustee to file with the bankruptcy court a Motion for Court Approval of Settlement; for Enforcement of Settlement; and for Entry of Judgment Thereon (motion to approve). In support of the motion, the trustee submitted a declaration in which he stated that he had personally observed

Rains at the settlement conference. According to the trustee, "Rains evinced a clear understanding of what was transpiring, the issues inherent in the settlement process, and the terms of the agreement as it evolved."

Rains opposed the motion to approve and sought rescission of the agreement on the ground that he was not mentally competent to enter into a contract at the time the agreement was negotiated and signed. In his opposition, Rains expressly "consent[ed] to the Court's resolution of any disputed material fact issues pursuant to Federal Rule of Evidence 43(e) as made applicable by Federal Rule of Bankruptcy Procedure 9017." Rains submitted several declarations in support of his contention that he was mentally incompetent, including those of a neurologist who treated him for the aneurysm and a clinical psychologist who provided follow-up care. The neurologist opined that "Mr. Rains would have been without the mental capacity to engage in business affairs on September 23, the date of his hospital admission, and for a number of days on each side of that date." The psychologist concurred, stating that at the time Rains negotiated the settlement, he "would not have had his normal mental capacity and would have been incapable of conducting business affairs with competence."

The trustee filed a reply controverting Rains's contention that he was mentally incompetent during the settlement conference. Accompanying the reply was a declaration from Gregory J. Hughes, counsel for the trustee. Hughes stated that he had a chance to observe Rains at the settlement conference. According to Hughes, Rains participated actively in the negotiations, arguing over the due date for a cash payment and over the use of funds in his retirement plan as security for the payment. After the settlement was reduced to writing, Rains reviewed the document carefully and asked his attorney questions about it. Hughes's overall impression also was that "Mr. Rains evinced a clear understanding of what was transpiring, the issues inherent in the settlement process, and the terms of

the settlement as it evolved." Rains's creditor and her attorney submitted similar declarations.

The bankruptcy court heard oral argument on the motion to approve the settlement agreement, but did not hold a separate evidentiary hearing. After taking the matter under advisement, the bankruptcy court issued oral findings of fact and conclusions of law and announced that it was not "persuaded that [Rains] lacked the capacity to enter into an agreement." The court ruled from the bench, granting the motion to approve. Its decision was memorialized in a minute order entered on February 20, 2003 (settlement order).

Rains filed a notice of appeal from the order approving the settlement agreement, and elected to have the appeal heard by the district court. The district court affirmed the bankruptcy court's decision, and Rains appealed.

## C. The Second Appeal (Court Enforcement of the Settlement Agreement)

While the first appeal was pending before the district court, Flinn filed an *ex parte* application for entry of judgment pursuant to the terms of the settlement agreement. This request was prompted by Rains's failure to pay $250,000 by the March 31, 2003 due date. The bankruptcy court entered judgment in favor of Flinn, ruling that Rains's "claim of exemption against the ABA Retirement Plan is hereby denied up to the sum of $250,000.00, and $250,000.00 of the funds in that Retirement Plan is hereby held to be property of the Chapter 7 estate." The judgment further required Rains to "forthwith withdraw the sum of $250,000.00 from the ABA Retirement Plan, and . . . pay said amount to the Trustee immediately upon receipt."

Rains filed a Motion to Alter or Amend Judgment (motion to amend judgment) in the bankruptcy court, contending that the court exceeded its jurisdiction when it declared that

$250,000 of the ABA retirement plan was part of the bankruptcy estate and ordered Rains to pay that amount from the retirement plan to the bankruptcy trustee. The bankruptcy court heard oral argument and denied the motion. Although the first appeal was pending in district court, neither party notified the district court of these later developments in bankruptcy court. Rains subsequently appealed the bankruptcy court's order denying the motion to amend judgment and its judgment enforcing the settlement agreement. Once again, Rains elected to have the appeal heard by the district court.

The district court's rationale for the disposition of this second appeal rested on a complicated interplay of procedural rules involving both the first and second appeals. Finding that the second appeal also challenged the order approving the settlement agreement, rather than merely challenging its enforcement, the district court altered the analysis of its prior ruling and determined that the original order approving the settlement agreement was not final after all.[1] The court reasoned that because the first appeal was taken from what proved to be an interlocutory order, it was premature, and should be treated as having been filed on the day the final judgment was entered, pursuant to Fed. R. Bankr. P. 8002(a).[2] As the prema-

---

[1]The district court explained that in its prior ruling, it considered the order approving the settlement agreement as final under our "pragmatic approach to finality in bankruptcy cases." *See Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 761-62 (9th Cir. 2000) (describing bankruptcy court order as final where it "resolve[d] and seriously affect[ed] substantive rights" and "finally determine[d] the discrete issue to which it [was] addressed") (citations omitted). The district court's ruling can be traced to the fact that the parties failed to notify the district court of the subsequent proceedings in bankruptcy court while the appeal was pending in district court.

[2]The first notice of appeal (from the order approving the settlement agreement) was filed on February 27, 2003. Judgment enforcing the settlement agreement was entered by the bankruptcy court on May 23, 2003. The motion to alter or amend judgment was filed on June 2, 2003 and denied on July 7, 2003. The second notice of appeal (from the denial of the motion to alter or amend judgment and from the judgment enforcing the settlement agreement) was filed on July 17, 2003.

ture but subsequently cured notice of appeal was deemed filed on the date judgment was entered (May 23, 2003), but before the motion to amend judgment was filed (June 2, 2003), the district court concluded that the bankruptcy court lacked jurisdiction over the motion to amend judgment because of the appeal then pending in district court. *See Dressler v. The Seeley Co. (In re Silberkraus)*, 336 F.3d 864, 869 (9th Cir. 2003) (observing that "the filing of a notice of appeal generally divests the trial court of jurisdiction.") (citations omitted). The district court then reasoned that because the bankruptcy court lacked jurisdiction over the motion to amend judgment, the filing of the motion did not toll the time allowed for appealing the judgment to the district court. Accordingly, the district court dismissed the second appeal for lack of jurisdiction on the basis that Rains's notice of appeal filed July 17, 2003 seeking review of the judgment that enforced the settlement agreement and denied the motion to amend judgment was untimely vis-à-vis the May 23, 2003, judgment. However, the district court's rationale does not address the fact that the notice of appeal filed on February 27, 2003, if premature because it was interlocutory, would be deemed filed on May 23, 2003, the date of final judgment. *See Arrowhead Estates Development Co. v. United States Trustee (In re Arrowhead Estates Development Co.)*, 42 F.3d 1306, 1310 (9th Cir. 1995), *as amended*; Fed. R. Bankr. P. 8002(a). The interlocutory and final orders would then merge into one judgment for the purpose of appeal. *See American Ironworks & Erectors Inc. v. N. Amer. Constr. Corp.,* 248 F.3d 892, 897-98 (9th Cir. 2001). Accordingly, the notice of appeal would be timely with respect to the February 20, 2003 order approving the settlement agreement, as well as the May 23, 2003 order enforcing the settlement agreement.[3]

---

[3]Under this analysis the motion to alter or amend judgment was outside the scope of appeal in the district court. However, because the motion to alter or amend judgment mirrored Rains's arguments on the merits, the district court's decision to exclude the motion to alter or amend judgment from appellate consideration does not affect the outcome of this appeal.

## II.  GENERAL STANDARDS OF REVIEW

"We review *de novo* a district court's decision on appeal from a bankruptcy court, and afford no deference to the prior decision of the district court. We also review *de novo* the bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code. We review the bankruptcy court's factual findings for clear error. Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004) (citations omitted).

## III.  DISCUSSION

### A.  The First Appeal (Appeal from the Order Approving the Settlement Agreement)

#### 1.  Jurisdiction

The trustee contends that we lack jurisdiction over Rains's appeal from the order approving the settlement agreement because the order was interlocutory. Thus, as a threshold matter, we must determine whether we have jurisdiction over the first appeal. *See Jeff D. v. Kempthorne*, 365 F.3d 844, 849-50 (9th Cir. 2004). We conclude that we do.

Jurisdiction over an appeal from an order of a bankruptcy court is governed by 28 U.S.C. § 158. That section vests jurisdiction in the district court to hear appeals from "final judgments, orders, and decrees . . . and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." *Id.* § 158(a). The courts of appeals are granted jurisdiction over "appeals from all *final* decisions, judgments, orders, and decrees entered" by the district courts in their bankruptcy appellate capacity. *Id.* § 158(d) (emphasis added). "Whether a bankruptcy court's decision is final . . . is a question of law

reviewed de novo." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)* 339 F.3d 782, 787 (9th Cir. 2003) (citation omitted).

**[1]** Although district courts have discretion to hear interlocutory appeals from bankruptcy courts, § 158(d) does not grant courts of appeals similar discretion to review interlocutory decisions. "The courts of appeals do not have jurisdiction to hear interlocutory appeals in bankruptcy cases." *Silver Sage*, 339 F.3d at 787. "Under 28 U.S.C. § 158(d), appellate jurisdiction exists when the bankruptcy court order and the decision of the district court acting in its bankruptcy appellate capacity are both final orders." *In re Bonham*, 229 F.3d at 761 (citations and footnote omitted). However, even if the order approving the settlement agreement were interlocutory, we are not necessarily deprived of jurisdiction, because "subsequent events can validate a prematurely filed appeal." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1402 (9th Cir. 1988) (citation omitted). "[T]he rule in this circuit [is] that once a final judgment is entered, an appeal from an order that otherwise would have been interlocutory is then appealable." *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1075 (9th Cir. 1991); *see also Special Investments Inc. v. Aero Air Inc.*, 360 F.3d 989, 993 (9th Cir. 2004) ("a prematurely filed notice of appeal can be cured if the rest of the claims are disposed of in a subsequent final decision terminating the litigation") (citation omitted). Whatever prematurity existed in Rains's appeal from the order approving the settlement agreement was cured by the subsequent entry of a final judgment. *See In re Eastport Assocs.*, 935 F.2d at 1075. We therefore have jurisdiction to consider Rains's first appeal.

## 2. Rains's Mental Competency to Enter Into the Settlement Agreement

**[2]** The parties agree that California state law applies to the issue of the validity of the settlement. *See Houston v. Holder*

*(In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) (holding that the validity of settlements in bankruptcy cases is best resolved by reference to state contracts law); *see also Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000) (observing the "basic federal rule . . . that state law governs the substance of claims [in bankruptcy cases]") (citation and internal quotation marks omitted). California law provides that "[a] conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission . . . ." Cal. Civ. Code § 39(a). Pursuant to this statute, "a party is entitled to rescission of a contract if, when he entered into the contract, he was not mentally competent to deal with the subject before him with a full understanding of his rights . . ." *Smalley v. Baker*, 262 Cal. App. 2d 824, 832 (1968), *overruled on other grounds by Weiner v. Fleischman*, 54 Cal. 3d 476 (1991). "[T]he test . . . in each instance [ ] [is] whether he understood the nature, purpose and effect of what he did." *Smalley*, 262 Cal. App. 2d at 832 (citations omitted).

**[3]** Rains argues that the bankruptcy court clearly erred in finding him mentally competent to enter into the settlement agreement. However, the record contained sufficient evidence to support a finding that Rains understood the nature, purpose and effect of his actions when he agreed to settle with the trustee and the creditor. Witnesses who personally observed Rains during the negotiations reported that Rains participated actively and appeared to have a full understanding of what was transpiring and of the terms of the settlement. Rains argued over certain terms and suggested alternatives to those he disliked. After the settlement was negotiated, Rains reviewed the written agreement and asked his attorney questions about it.

**[4]** Rains does not seriously dispute the veracity of the witness statements offered by the trustee. Rather, he relies heavily on the opinions of his treating physician and psychologist

that a person with his diagnosis would not have had the mental capacity to conduct business affairs at the time of the negotiations. However, the weight to be given expert medical testimony is within the discretion of the trier of fact. *Wong Ho v. Dulles*, 261 F.2d 456, 460 (9th Cir. 1958). The bankruptcy court was not bound to follow these expert opinions. *See United States v. Honolulu Plantation Co.*, 182 F.2d 172, 178 (9th Cir. 1950). In the face of conflicting testimony, the bankruptcy court did not clearly err in discounting the theoretical speculation of Rains's experts, or in finding that Rains was mentally competent to enter into the settlement agreement. *See Prescod v. AMR, Inc.*, 383 F.3d 861, 869 (9th Cir. 2004) (observing that the trier of fact is in the best position to resolve conflicts in the evidence).

### 3. Denial of Rains's Request to Supplement the Evidentiary Record

Rains contends that the bankruptcy court committed reversible error by "denying [his] verbal request at the preliminary hearing . . . to supplement the evidentiary record to challenge [Flinn's] lay witness declaration testimony submitted in support of [Flinn's] [reply]." He further asserts that the bankruptcy court's "decision to deny Rains' request to file evidentiary objections" to the reply declarations violated his procedural due process rights.

[5] Rains's arguments are not persuasive for five reasons. First, Rains waived his due process claim by failing to raise it properly before either the bankruptcy court or the district court. In general, this Court does not consider an issue raised for the first time on appeal. *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004).[4] Rains did not raise the issue

---

[4]There are three recognized exceptions pursuant to which we may exercise discretion to hear previously unconsidered claims: "(1) In the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new

at all before the bankruptcy court. He did not raise it before the district court until he filed his reply brief. The district court did not address the due process claim in its subsequent order, undoubtedly relying on the principle that "issues cannot be raised for the first time in a reply brief." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) (citation omitted).

**[6]** Second, Rains never articulated his requests with sufficient clarity to preserve the alleged error for review. For an argument to be considered on appeal, it generally "must be raised sufficiently for the trial court to rule on it." *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996) (citation omitted). The closest Rains's counsel came to asking for expansion of the record was to complain that "[w]e get no chance to take a whack at the reply declarations. I mean, are you going to do that sua sponte, or should I file something or —." This vague statement did not adequately apprise the bankruptcy court of the nature of Rains's request such that the court had an opportunity to rule on it.

**[7]** Third, nothing prevented Rains from orally objecting to the reply declarations at the hearing on the motion to approve. However, he failed to so. At one point, Rains's counsel stated that "several of the declarations are replete with hearsay statements which are completely inadmissible," but he never articulated any clear objections to specific statements made in the declarations. Absent a contemporaneous objection, we will review for plain error "where the integrity or fundamental fairness of the proceedings . . . is called into serious question." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001). That is not the case here.

issues arises while appeal is pending because of a change in the law, (3) or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citation and alterations omitted). None of these exceptions apply.

**[8]** Fourth, as a substantive matter, the main authority Rains cites in support of his allegation of a due process violation is *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).[5] That case simply stands for the proposition that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Id*. at 314 (citation omitted). In that sense, Rains was accorded his full due process rights with respect to the motion. The declarations of the trustee and his attorney (Flinn declarations) were filed well in advance of the hearing. Although the declarations of the creditor and her attorney were filed only one day before the hearing, Rains's counsel had received and read them by the time the hearing took place, and they were substantially similar in substance to the Flinn declarations. Rains had adequate opportunity to challenge the declarations at the hearing before the bankruptcy court.

**[9]** Fifth and finally, Rains expressly waived his right to a separate evidentiary hearing when he filed his opposition to the motion to approve the settlement.[6]

**[10]** For these reasons, the bankruptcy court did not err in declining to allow Rains to supplement the evidentiary record.

---

[5]The only other authority Rains cites in conjunction with his due process claim is inapposite. *See Ake v. Oklahoma*, 470 U.S. 68, 74 (1985) (holding that due process requires states to provide indigent defendants with psychiatric assistance where sanity is likely to be a significant factor at trial).

[6]Rains did so pursuant to E.D. Cal. Bankr. 9014-1(f)(1)(ii), which requires an opposition to a motion to "specify whether the responding party consents to the Court's resolution of the disputed material factual issues pursuant to FRCivP 43(e) as made applicable by FRBP 9017."

## B.  The Second Appeal (Appeal from the Judgment Enforcing the Settlement Agreement)

### 1.  The Bankruptcy Court's Jurisdiction

Rains asserts that his filing of a notice of appeal from the order approving the settlement agreement transferred jurisdiction to the district court, thereby depriving the bankruptcy court of jurisdiction to enter the judgment enforcing the settlement agreement. We are not persuaded.

**[11]** We review *de novo* whether the bankruptcy court had jurisdiction. *Dunmore v. United States*, 358 F.3d 1107, 1111 (9th Cir. 2004). It is generally true that the timely filing of a notice of appeal divests the trial court of jurisdiction. *See In re Silberkraus*, 336 F.3d at 869 (9th Cir. 2003). However, if the order at issue is interlocutory, any appeal would be premature and would not transfer jurisdiction to an appellate court. *See Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1148 (10th Cir. 1991); *see also United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re United States Abatement Corp.)*, 39 F.3d 563, 568 (5th Cir. 1994) (holding that premature notice of appeal from interlocutory bankruptcy order was of no effect).[7] Rather, the trial court retains jurisdiction to enter final judgment. *See Albiero v. City of Kankakee*, 122 F.3d 417, 418 (7th Cir. 1997).

Additionally, the rule that a notice of appeal will divest a court of jurisdiction "is not absolute." *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1190 (9th Cir. 2000). For example, a trial court retains "jurisdiction to take actions that preserve the status quo during the pendency of an appeal," although the

---

[7]The trustee contends that the bankruptcy court retained jurisdiction to enter judgment because the order approving the settlement agreement was interlocutory. We need not resolve this question because of our conclusion that whether the order was final or interlocutory, the bankruptcy court acted within its jurisdiction.

court "may not finally adjudicate substantial rights directly involved in the appeal." *Id*. (citations omitted). And "[a]bsent a stay or supersedeas, the . . . court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment." *Id*. (citations omitted).

**[12]** In this case, the bankruptcy court's judgment enforcing the settlement agreement, whether considered a final order or an interlocutory order, did not change the status quo or materially alter the issues on appeal. The judgment merely effectuated the express terms of the settlement agreement, and did not alter or expand upon the order approving the settlement agreement.[8] As a result, the bankruptcy court acted within its jurisdiction when it entered judgment, even though Rains had already filed a notice of appeal from the order approving the settlement agreement.

## 2. The District Court's Jurisdiction Over the Second Appeal

**[13]** We review the timeliness of a notice of appeal *de novo*. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003). Under the district court's analysis, whether Rains's appeal was timely depends on whether his motion to alter or amend the judgment was properly before the bankruptcy court. A bankruptcy court retains jurisdiction to consider a timely motion under Fed. R. Bankr. P. 9023 to alter or amend the judgment, even when the motion is filed subsequent to a notice of appeal. *See* Fed. R. Bankr. P. 8002(b)(4); *see also Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 n.1 (9th Cir. 1999) (interpreting analogous provision in

---

[8]The settlement agreement did not explicitly require Rains to remit $250,000 in retirement plan funds to the trustee. However, as discussed below, Rains's agreement that the funds would become part of the bankruptcy estate in the event he failed to make a timely cash payment triggered a legal duty on his part to surrender the funds to the trustee. *See* 11 U.S.C. § 521(4).

Fed. R. App. P. 4(a)(4) as granting district court jurisdiction to entertain timely motion to alter or amend the judgment after notice of appeal is filed). The previously filed notice of appeal does not become effective "until the entry of the order disposing of the . . . motion . . . ." Fed. R. Bankr. P. 8002(b)(4).[9]

[14] Rains's notice of appeal from the order approving the settlement agreement, although filed prior to the motion to amend judgment, did not divest the bankruptcy court of jurisdiction to consider that motion. *See* Fed. R. Bankr. P. 8002(b)(4) (listing various post-judgment motions); *see also Keating*, 186 F.3d at 1114 n.1. A motion to alter or amend a judgment must be filed within 10 days after entry of the judgment. Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59(e). The bankruptcy court entered judgment on May 23, 2003. Rains's motion to alter or amend the judgment enforcing the settlement agreement, filed on June 2, 2003, was therefore timely.

[15] Rains's notice of appeal from the entry of judgment enforcing the settlement agreement was also timely.[10] A party

---

[9]In *Keating*, we stated that when a motion to alter or amend the judgment is filed, any previously-filed notice of appeal is rendered ineffective. *Keating*, 186 F.3d at 1114 n.1. In so stating, we relied upon *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982). *Id*. In *Griggs*, the United States Supreme Court held that a notice of appeal filed before a Rule 59(e) motion to alter or amend the judgment "simply self-destructs." 459 U.S. at 61 (citation omitted). This holding was effectively overruled when "Rule 4(a)(4) [of the Federal Rules of Appellate Procedure] was amended . . . to provide that when a notice is prematurely filed, it shall be in abeyance and become effective upon the date of entry of an order disposing of the Rule 59(e) motion." *Schroeder v. McDonald*, 55 F.3d 454, 458 (9th Cir. 1995). Thus, Rains's notice of appeal from the order approving the settlement agreement, rather than self-destructing when the motion to amend was filed, was simply in abeyance.

[10]Because of the unique manner in which this case proceeded through the bankruptcy court and the district court, there are two operative notices of appeal. The first notice addresses the order approving the settlement agreement. The second notice pertains to the judgment enforcing the settlement agreement and denying the motion to amend the judgment.

wishing to appeal a decision of the bankruptcy court must file the notice of appeal "within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a). A timely motion to alter or amend the judgment under Fed. R. Bankr. P. 9023 tolls the time period for filing a notice of appeal. Fed. R. Bankr. P. 8002(b)(2). In that case, "the time for appeal for all parties runs from the entry of the order disposing" of the motion. Fed. R. Bankr. P. 8002(b). The order denying the motion to amend judgment was entered on July 7, 2003. Rains filed a notice of appeal ten days later, on July 17, 2003. As a result, the district court had jurisdiction to hear the appeal (as do we).[11] The district court erred in dismissing Rains's appeal as untimely.[12]

### 3. Rains's Interest in the Retirement Plan

[16] Section 541(c)(2) of the Bankruptcy Code provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). "The natural reading of [this] provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumante*, 504 U.S. 753, 758 (1992). The United States Supreme Court has held that an anti-alienation provision in an

---

[11]As Rains points out, the district court probably lacked jurisdiction to reverse itself on the issue of whether the order approving the settlement agreement was "final" for purposes of appeal, because the district court's reversal of its prior ruling occurred on May 18, 2004, after the prior ruling was appealed to us on August 6, 2003. *See In re Silberkraus*, 336 F.3d at 869. In any event, because we review the bankruptcy court's rulings *de novo*, any error committed by the district court in determining the finality of the settlement order does not affect our analysis.

[12]However, as we may affirm on any basis supported by the record, we nevertheless affirm the district court's judgment in favor of the trustee, as discussed below. *See Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.)*, 24 F.3d 1145, 1151 (9th Cir. 1994).

ERISA-qualified pension plan constitutes such a restriction for purposes of the § 541(c)(2) exclusion. *Id.* at 760. The exclusion is permissive rather than mandatory: "a debtor's interest in an ERISA-qualified pension plan *may be* excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)[.]" *Id.* at 765 (emphasis added). A bankruptcy court lacks subject matter jurisdiction over excluded ERISA-qualified pension plan funds. *In re McClellan*, 99 F.3d 1420, 1423 (7th Cir. 1996).

**[17]** In the settlement agreement, Rains agreed that if he did not make a timely cash payment to the trustee or post alternative collateral, his *exemption* claim to the ABA retirement plan would be denied up to the amount of $250,000. Rains now contends that his interest in the ABA retirement plan must be excluded from the bankruptcy estate pursuant to the Employee Retirement Income Security Act (ERISA),[13] and that the bankruptcy court therefore lacked jurisdiction to order him to withdraw $250,000.00 in retirement plan funds and remit it to the trustee. However, by ceding his claim of exemption in the settlement agreement, Rains necessarily agreed to include the retirement plan funds in the bankruptcy estate pursuant to the "well settled rule that property cannot be exempted unless it is first property of the estate." *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996); *see also Owen v. Owen*, 500 U.S. 305, 308 (1991) ("No property can be exempted . . . unless it first falls *within* the bankruptcy estate") (emphasis in the original). Rains cannot now seek to exclude funds from the estate that he previously agreed were included in the estate. As a result, the bankruptcy court's denial of the exemption, in accordance with the terms of the settlement agreement, triggered a legal duty to surrender the retirement plan funds to the trustee. *See* 11 U.S.C. § 521(4) ("The debtor shall . . . surrender to the trustee all property of the estate . . . ."). Thus, the bankruptcy court acted within its jurisdiction when it ordered Rains to

---

[13]29 U.S.C. § 1001 *et seq.*

withdraw $250,000 in plan funds and remit that amount to the trustee.[14]

### 4.   Rains's Due Process Claim

Finally, Rains claims the bankruptcy court violated his due process rights when it ordered him to surrender the $250,000 in retirement plan funds, because the ordered relief fell outside the scope of the agreement and settlement order. Rains arguably waived this claim by not properly raising it before the bankruptcy court. *See Cold Mountain*, 375 F.3d at 891. Regardless, Rains's contentions that he was never given notice of Flinn's intention to seek payment from the retirement plan funds, and that the bankruptcy court violated his due process rights by ordering him to surrender the funds, have no merit.

[18] Under the Bankruptcy Code, property of the estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), unless the property is excluded or exempted under state or federal law, *see e.g.* 11 U.S.C. §§ 522(b), 541(b), (c)(2). When Rains agreed to the settlement, he expressly acknowledged that his claimed exemption of retirement plan funds would be denied up to the amount of $250,000, and these funds would become part of the bankruptcy estate in the event he failed to make a timely cash payment. As discussed above, Rains became legally obligated to deliver the funds to the trustee once the exemption was denied. *See* 11 U.S.C. § 521(4). Therefore, the judgment was

---

[14]The United States Supreme Court's recent decision in *Rousey v. Jacoway*, 125 S. Ct. 1561 (2005) does not alter our conclusion. In *Rousey*, the Supreme Court ruled that debtors may exempt assets in their Individual Retirement Accounts from the bankruptcy estate pursuant to 11 U.S.C. § 522(d)(10)(E). *Id.* at 1564. Rains does not contend that the retirement plan funds are exempted from the estate under § 522(d)(10)(E). Rather, he argues that the funds are excluded from the estate altogether pursuant to 11 U.S.C. § 541(c)(2).

consistent with the provisions of Chapter 11 of the Bankruptcy Code, the settlement agreement, and the order approving the settlement agreement, and did not violate Rains's due process rights.

Rains also complains that the application for entry of judgment was made without notice or a hearing. However, "[a] bankruptcy court, as a court of equity, . . . possesses the power to summarily enforce settlements." *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 958 (9th Cir. 1994) (citation omitted). The Federal Rules of Bankruptcy Procedure generally prohibit a trustee from making *ex parte* contact with the court "concerning matters *affecting* a particular case or proceeding." Fed. R. Bankr. P. 9003(b) (emphasis added). The application for entry of judgment in this case did not affect a pending proceeding, because the issues had previously been adjudicated, and all that remained for the court to do was enter a judgment in accordance with the order approving the settlement agreement. *See Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1164 (5th Cir. 1988) (concluding that the bankruptcy judge did not violate rule against *ex parte* contact by adopting findings and conclusions after communications with creditor's attorney because written findings merely confirmed prior verbal ruling). Thus, any *ex parte* contact was not improper. In any event, Rains had sufficient opportunity to air his objections in his motion to amend the judgment and in the hearing held on the motion. Rains's due process rights were fully preserved.

## IV.  CONCLUSION

We have jurisdiction to consider Rains's appeal from the bankruptcy court's order approving the settlement agreement. The bankruptcy court did not clearly err in finding Rains mentally competent to enter into the agreement, and properly denied Rains's request to supplement the evidentiary record. The bankruptcy court had jurisdiction to enter the judgment

enforcing the settlement agreement; Rains's appeal from that judgment was timely; the bankruptcy court properly ordered Rains to remit $250,000 in retirement plan funds to Flinn; and Rains's due process rights were not violated.

**AFFIRMED**.