NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-12-1522-KuDTa |
| | ) | |
| SIRFIANI CARLSON, | ) | Bk. No.   08-41652 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JAMES H. MAGEE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| DAVID M. HOWE, Chapter 13 | ) | |
| Trustee; SIRFIANI CARLSON, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on October 17, 2013
in Seattle, Washington

Filed – November 15, 2013

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Brian D. Lynch, Bankruptcy Judge, Presiding

_____

Appearances:     Deirdre P. Glynn Levin of Keller Rohrback LLP
argued for appellant James H. MaGee; Michael G.
Malaier argued for appellee David M. Howe,
chapter 13 trustee.

_____

Before: KURTZ, DUNN and TAYLOR, Bankruptcy Judges.

_____

     [*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

## INTRODUCTION

James MaGee appeals from the bankruptcy court's order imposing against him $2,685 in sanctions. MaGee also appeals from the bankruptcy court's denial of his motion for reconsideration. We AFFIRM both orders.

## FACTS

Debtor Sirfiani Carlson filed her chapter 13[1] petition and her proposed chapter 13 plan on April 17, 2008. On June 25, 2008, the bankruptcy court entered an order confirming Ms. Carlson's plan. In relevant part, the confirmation order provided that "the debtor shall inform the Trustee of any changes in circumstances or receipt of additional income. . . ." In April 2009, Ms. Carlson and her family were involved in a serious motor vehicle collision, in which their automobile was "rear-ended" by another automobile. Within days, Ms. Carlson retained the Carr Law Firm ("Carr") to represent her regarding her claim against the driver of the other automobile ("Third Party Claim"). Her other family members also retained Carr to represent them regarding their third party claims.

In May 2009, Ms. Carlson and her husband met with MaGee to discuss the modification of her chapter 13 plan. At that meeting, Ms. Carlson discussed with MaGee the fact that her husband had lost his job, thereby leaving them with less income available to make her chapter 13 plan payments. Neither

_____

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

Ms. Carlson nor her husband mentioned at that meeting that they had been involved in the motor vehicle collision or that she had retained counsel to represent her regarding her Third Party Claim.

In November 2009, Ms. Carlson reached a settlement with the other party to the motor vehicle collision, pursuant to which the other party's insurer agreed to pay $25,000, the policy limits, in settlement of Ms. Carlson's Third Party Claim. Ms. Carlson used the entire $25,000 settlement to pay her medical bills and attorneys fees.[2]

In June 2010, Ms. Carlson commenced a lawsuit in state court against her own insurer regarding her underinsured motorist coverage ("UIM Claim"). Between late 2010 and early 2011, discovery was taken in the UIM Claim litigation. According to Ms. Carlson and her husband, John Carlson ("Mr. Carlson"), during the course of this discovery, they disclosed Ms. Carlson's bankruptcy filing to both Carr and their insurer. As the Carlsons tell it, Carr thereafter directed the Carlsons to contact their bankruptcy counsel to inquire whether their collision-related claims needed to be disclosed in Ms. Carlson's bankruptcy case. The Carlsons further testified that they then telephoned MaGee's law offices, spoke with one or more of MaGee's

_____

[2]There was some debate about this. Not all of the settlement funds were paid directly to Ms. Carlson's attorneys and health care providers. Apparently, some funds were paid directly to Ms. Carlson. But she testified that she used the funds paid directly to her to pay medical bills that were not otherwise satisfied. We have found no evidence in the record contradicting this testimony.

3

three staff members, and were told that they did not need to disclose their claims, that they did not need to worry about the claims because they did not constitute income.

Carr attorney Matthew Van Gieson's declaration testimony generally tends to corroborate the Carlsons' version of these events. But the specifics of the Carlsons' phone conversation(s) with MaGee's staff, particularly the date(s) the conversations occurred and the MaGee staff members involved, are unclear at best and internally inconsistent at worst. Furthermore, all three of MaGee's staff members offered live testimony that they did not recall any such phone conversations ever taking place or that they never spoke to either of the Carlsons about the motor vehicle accident or the claims.

Ms. Carlson's husband John Carlson filed his own separate bankruptcy case in February 2011. He also retained MaGee as his bankruptcy counsel. According to Ms. Carlson, she attended one of the pre-bankruptcy meetings between Mr. Carlson and MaGee, a meeting held on December 30, 2010, at which the Carlsons delivered to MaGee Mr. Carlson's "W-2" and other documentation. Ms. Carlson testified that she spoke directly with MaGee at this meeting and asked him whether the claims needed to be disclosed to anyone. As Ms. Carlson explained it, MaGee gave her two answers. The first answer matched the answer she claims to have received from MaGee's employees, that she did not need to worry about the claims because they were not income. The second answer, according to Ms. Carlson, was unique to MaGee. MaGee supposedly told Ms. Carlson that she did not need to worry about reporting the claims because the chapter 13 trustee's office was

4

"a mess" due to internal issues and therefore was unlikely to catch any failure to disclose. While Mr. Carlson could not recall the specifics of the discussion concerning the claims, his live testimony generally tended to corroborate Ms. Carlson's statement that the claims were discussed during the December 30, 2010 meeting with MaGee.

MaGee offered a different version of these events. Initially, he asserted that he simply could not recall whether he had any in-person discussions directly with the Carlsons regarding either the motor vehicle collision or the claims. Later on, apparently having reviewed his notes and possibly other law office records, he more-categorically denied that any such discussion ever took place on December 30, 2010, or at any other time. According to MaGee, if he had known about the retention of Carr, he would have sought to obtain bankruptcy court approval of that employment.

Ms. Carlson never disclosed the claims to either the chapter 13 trustee or the bankruptcy court. In May 2011, an arbitrator awarded Ms. Carlson close to $50,000 on account of her UIM Claim. And in June 2011, she filed a motion seeking to have the arbitration award reduced to judgment. In response, her insurer filed a motion in the state court seeking to clarify to whom the arbitration award should be paid in light of Ms. Carlson's bankruptcy. The insurer also apparently notified the chapter 13 trustee regarding the arbitration award.

Upon receipt of notice of the arbitration award, the trustee commenced discharge revocation proceedings against Ms. Carlson, and on March 8, 2012, the bankruptcy court entered an order

revoking Ms. Carlson's discharge. Based on the evidence presented during the discharge revocation proceedings, primarily Ms. Carlson's declaration testimony that she told Carr about her bankruptcy and Magee's staff about the claims, the bankruptcy court stated that it would reserve the issue of whether sanctions should be imposed against counsel.

On the heels of the discharge revocation proceedings, the chapter 13 trustee filed a motion seeking to modify Ms. Carlson's chapter 13 plan. By way of the plan modification motion, the trustee sought to use most of the proceeds from Ms. Carlson's $50,000 arbitration award judgment to pay the remaining amount owed to her unsecured creditors. Ms. Carlson opposed that motion. After holding two hearings on the plan modification motion, the bankruptcy court determined that only $850 of the arbitration award judgment was attributable to Ms. Carlson's lost wages, and only that portion of the judgment was property of the estate that could and would be distributed pursuant to the trustee's proposed plan modification.

As for the attorney sanctions issue, the court stated at one of the plan modification hearings that it was prepared to issue an order to show cause regarding whether sanctions might be appropriate against MaGee and Carr for "their knowing and intentional failure to disclose to the trustee the material change in [Ms. Carlson's] circumstances." Hr'g Tr. (Mar. 14, 2012) at 14:12-15.

On March 19, 2012, pursuant to the court's statements regarding sanctions at the March 14, 2012 plan modification hearing, the court issued its order to show cause. That order

6

laid out the facts on which the court felt sanctions might be imposed; however, that order did not specify the legal basis pursuant to which sanctions might be imposed. Nonetheless, on March 28, 2012, the bankruptcy court held a status conference on the order to show cause at which it notified MaGee that it was relying on its inherent authority as the legal basis for potentially issuing sanctions.[3]

The bankruptcy court held a two-day evidentiary hearing on the order to show cause in July 2012. Ultimately, it determined that, under its inherent authority, it would impose $2,685 in sanctions against MaGee, payable to the trustee and for distribution to Ms. Carlson's creditors under her modified chapter 13 plan.[4] The bankruptcy court held that MaGee's response to Ms. Carlson's inquiry regarding the claims amounted to bad faith and was an intentional or reckless misstatement regarding the disclosure requirement under the plan confirmation order.

The bankruptcy court primarily based its sanctions award on MaGee's conduct at the December 30, 2010 meeting with the Carlsons. The bankruptcy court credited Ms. Carlson's testimony that MaGee told her at this meeting that she did not have to

---

[3]To the extent MaGee might have raised some sort of due process issue regarding the notice he received that the court was relying on its inherent authority, MaGee has forfeited that issue by not raising it either in the bankruptcy court or in this appeal. See Rains v. Flinn (In re Rains), 428 F.3d 893, 902 (9th Cir. 2005).

[4]The bankruptcy court did not award any sanctions against Carr, and no one has appealed that ruling.

7

disclose the claims or any resulting recoveries because they were not income. The court also credited Ms. Carlson's testimony that MaGee told her that the trustee was unlikely to subsequently discover the claims, in light of the internal difficulties the trustee's office was experiencing at the time.

The bankruptcy court further found that MaGee's testimony was not credible regarding the December 30, 2010 meeting. The court explained that it did not believe MaGee's contentions that Ms. Carlson did not attend the December 30, 2010 meeting and that he did not discuss the claims at that meeting. The court entered an order imposing $2,685 in sanctions against MaGee on August 31, 2012.

On September 10, 2012, MaGee filed a motion for reconsideration of the sanctions award. In essence, MaGee argued that the bankruptcy court had erred in crediting Ms. Carlson's testimony over his own testimony. According to MaGee, Ms. Carlson's testimony regarding her post-confirmation contacts with MaGee and his employees was inconsistent with her other, prior statements under oath regarding the same subject matter. MaGee further argued that it was improper for the court to ascribe any bad faith motive, or to conclude that he was being coy, based on the uncertain and tentative nature of his initial statements regarding whether he had any discussions with Ms. Carlson concerning the claims. As MaGee put it, the uncertainty and tentativeness of his initial statements reflected nothing more than his need to refresh his recollection by going back and checking his own records before he could categorically deny that he had met with Ms. Carlson and discussed the claims.

8

MaGee further pointed to several instances in which the Carlsons' testimony supposedly had been impeached or the Carlsons had failed to inform him or anyone else of assets and changes in income notwithstanding their duty to disclose these items. These instances, MaGee reasoned, fatally undermined the Carlsons' credibility.

On October 3, 2012, the bankruptcy court entered an order denying MaGee's reconsideration motion. The court explained in detail its reasoning for crediting Ms. Carlson's testimony over MaGee's testimony. According to the bankruptcy court, there was no genuine and material inconsistency between Ms. Carlson's live testimony and her prior statements regarding her meeting with MaGee on December 30, 2010, and their discussion concerning the claims. The bankruptcy court also explained that its credibility assessments of both witnesses were based on its observation of their live testimony and that MaGee had not presented any new evidence or law that would justify reconsideration of the court's sanctions order.

On October 12, 2012, MaGee timely filed a notice of appeal from the sanctions order and the order denying his reconsideration motion.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err when it imposed sanctions

9

against MaGee?[5]

## STANDARDS OF REVIEW

We review the bankruptcy court's sanctions award for an abuse of discretion. See Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

The bankruptcy court abuses its discretion if it applies an incorrect legal standard or its findings of fact are illogical, implausible, or not supported by the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

Whether the bankruptcy court proceedings comported with the requirements of due process is a question of law we review de novo. Alonso v. Summerville (In re Summerville), 361 B.R. 133, 139 (9th Cir. BAP 2007).

## DISCUSSION

Bankruptcy courts have inherent authority to sanction attorneys appearing before them for a broad range of improper conduct, even if the improper conduct was not specifically prohibited by court order and even in the absence of explicit statutory sanctioning authority. See In re Lehtinen, 564 F.3d at 1058. When an attorney intentionally or recklessly misconstrues applicable law for an improper purpose, the attorney's conduct

---

[5]Even though MaGee's notice of appeal referenced both the sanctions order and the order denying his motion for reconsideration, MaGee's appeal briefs do not contain any arguments challenging the court's order on the reconsideration motion. Consequently, MaGee has forfeited any such arguments. See Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (citing Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994)); Cashco Fin. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 771 n.7 (9th Cir. BAP 2006) (citing Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994)).

10

constitutes bad faith and may subject the attorney to inherent authority sanctions. See Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001).

Here, the bankruptcy court explicitly found that MaGee's conduct constituted bad faith in that MaGee intentionally or recklessly misconstrued the disclosure requirements set forth in the confirmation order for the improper purpose of concealing the claims from the trustee and the bankruptcy court.

MaGee argues on appeal that he had no duty, as Ms Carlson's counsel, to disclose the claims or the associated recoveries. As MaGee puts it, because he had no such duty, the bankruptcy court should not have imposed sanctions against him based on the nondisclosure of the claims. According to MaGee, he had no such disclosure duty here because he did not "objectively know" about the claims or the recoveries. He further argues that, absent his actual knowledge, there is no legal basis for imposing upon him, as the debtor's counsel, a duty to inquire or to investigate whether any post-confirmation changes of circumstances had occurred that were subject to disclosure.

MaGee's argument regarding duty is premised on his asserted lack of knowledge of the claims. But the bankruptcy court found that MaGee knew of the claims no later than December 30, 2010, when he met in person with Ms. Carlson, and she asked him whether the claims needed to be disclosed. MaGee disputes that this meeting ever took place and that he ever told Ms. Carlson that she did not need to disclose the claims. Therefore, the efficacy of MaGee's argument regarding duty hinges on MaGee's ability to successfully challenge the bankruptcy court's findings concerning

11

the December 30, 2010 meeting.

There is no basis for us to overturn the bankruptcy court's findings concerning the December 30, 2010 meeting.  There is sufficient evidence in the record, in the form of Ms. Carlson's testimony, that she attended the December 30, 2010 meeting and inquired regarding whether the claims needed to be disclosed. According to Ms. Carlson's testimony, MaGee in response told her that there was no need to disclose the claims because they were not income and because the chapter 13 trustee was unlikely to later discover the claims in light of internal troubles within the trustee's office.

While MaGee's own testimony told a different story, that Ms. Carlson did not attend the December 30, 2010 meeting and that he never spoke with her about the claims, the bankruptcy court chose to credit Ms. Carlson's testimony over MaGee's testimony. The bankruptcy court explicitly found that Ms. Carlson's testimony on this point was credible and that MaGee's testimony on this point was not credible.

"We must accord great deference to the trial court's determination regarding whether a witness speaks the truth." Cooper v. Allustiarte (In re Allustiarte), 786 F.2d 910, 917 (9th Cir. 1986).  The considerable deference conferred on credibility findings is mandated by Civil Rule 52(a)(6) and its Bankruptcy Rule cognate, Rule 8013.  See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [Civil Rule] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations

12

in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

We acknowledge that the deference afforded to the bankruptcy court's credibility findings is not limitless. As Anderson explained:

> Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.

Anderson, 470 U.S. at 575.

Here, MaGee contends that Ms. Carlson's live testimony at the sanctions hearing was inconsistent with her prior deposition and declaration testimony. MaGee asserts that it is impossible to reconcile Ms. Carlson's live testimony with her failure to even mention the December 30, 2010 meeting in her prior statements under oath regarding her post-confirmation contact with MaGee and his staff. But MaGee cross-examined Ms. Carlson about this very issue at the sanctions hearing, and Ms. Carlson explained that her prior statements focused exclusively on her telephone contacts with MaGee's staff. The bankruptcy court found Ms. Carlson's explanation both credible and plausible, and we see no basis on this record to overturn that finding.

More generally, MaGee argues that the bankruptcy court should not have chosen to credit Ms. Carlson's testimony regarding the December 30, 2010 meeting because of ambiguities and/or inconsistencies in her story regarding her telephone conversations with MaGee's staff and because, according to MaGee, Ms. Carlson failed to keep him informed regarding other changes

13

in her financial condition, including changes in her and her husband's employment status. Even if we assume that all of MaGee's asserted facts in this regard are true, these facts do not contradict Ms. Carlson's testimony regarding the December 30, 2010 meeting, nor do they render that testimony so "internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." Anderson, 470 U.S. at 575.

Simply put, the bankruptcy court's findings regarding Ms. Carlson's and MaGee's discussion of the claims at the December 30, 2010 meeting were not illogical, implausible or without support in the record. Hinkson, 585 F.3d at 1262. Thus, we must uphold these findings.

Given that MaGee is charged with knowing of the claims as of December 2010, he thereafter had a duty, as Ms. Carlson's legal representative and as an officer of the court, to help her to comply with the bankruptcy court's confirmation order by facilitating her disclosure of the claims. The bankruptcy court found, however, that instead of helping Ms. Carlson to comply, MaGee acted in bad faith by intentionally or recklessly misstating her duty to disclose for the purpose of concealing information subject to the confirmation order's disclosure requirements. A litigant's counsel engages in bad faith conduct sanctionable under the bankruptcy court's inherent authority when he or she intentionally impedes enforcement of the court's orders. See Miller v. Cardinale (In re Deville), 280 B.R. 483, 495-96 (9th Cir. BAP 2002), aff'd, 361 F.3d 539 (9th Cir. 2004)(affirming inherent authority sanctions award against litigant and his counsel based in part on their mutual efforts to

14

hamper enforcement of the court's orders); see also Fink, 239 F.3d at 993-94 (holding that "reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power.").

In sum, we reject MaGee's argument regarding duty because it is based on a false premise, that MaGee did not know about Ms. Carlson's claims in December 2010.

MaGee next posits three disparate facts which, according to him, should have caused the bankruptcy court to exclude the claims from the "any changes in circumstances" disclosure requirement. The three posited facts are as follows: (1) the net economic impact of the automobile collision and the associated claims turned out to be "negative or neutral" for Ms. Carlson; (2) the bankruptcy court ultimately determined that only $850 of Ms. Carlson's recoveries on her claims constituted estate property; and (3) Ms. Carlson's $50,000 recovery on the UIM Claim was not reduced to judgment until after she received her discharge.

For purposes of this appeal, we can assume the accuracy of all three posited facts. Nonetheless, none of them individually or jointly establish that the claims should have been excepted from the "any changes in circumstances" disclosure requirement. As the bankruptcy court pointed out, the disclosure requirement on its face is broad and does not explicitly provide for any exceptions. And as this Panel previously has opined, the types of "changed circumstances" relevant to chapter 13 post-confirmation practice are those substantial and unanticipated changes in a debtor's circumstances that can affect

15

the debtor's ability to make plan payments. See Mattson v. Howe (In re Mattson), 468 B.R. 361, 368 & n.4 (9th Cir. BAP 2012) (citing Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 358 (9th Cir. 1994)). None of MaGee's posited facts establish that, at the time he counseled Ms. Carlson on the disclosure requirement, the claims could not and would not affect her ability to make plan payments.

Put another way, none of the facts MaGee now relies on existed at the time he construed the disclosure requirement for Ms. Carlson, and hence, none of them are relevant to the court's finding that MaGee intentionally or recklessly misconstrued the disclosure requirement for the improper purpose of concealing the claims from the trustee and the bankruptcy court.

At the discharge revocation hearing, the bankruptcy court repeatedly explained to the litigants that the disclosure requirement would be undermined if the party charged with disclosure was granted the power to unilaterally decide for themselves which changes in circumstances are material and reportable and which are not. We agree. Indeed, we would state this proposition even more emphatically. Our bankruptcy system cannot properly function unless debtors make full, candid and complete disclosure of their financial affairs when the Bankruptcy Code or the bankruptcy court's orders direct them to do so. See Searles v. Riley (In re Searles), 317 B.R. 368, 378 (9th Cir. BAP 2004), cited with approval in, Retz v. Sampson (In re Retz), 606 F.3d 1189, 1199 (9th Cir. 2010). If debtors (or their counsel) are able to evade their disclosure-related responsibilities by making their own unilateral and self-serving

16

determinations of what is and is not material, the bankruptcy disclosure requirements would become largely unenforceable and our entire bankruptcy system would be threatened.

Accordingly, on both relevancy and policy grounds, MaGee's three posited facts do not justify or excuse his conduct relating to the nondisclosure of the claims.

MaGee next challenges the amount of sanctions that the bankruptcy court imposed against him. MaGee contends that the sanctions imposed were punitive in nature and hence improper. We agree with MaGee's legal premise, that the bankruptcy court's inherent sanctions authority does not include the power to impose punitive sanctions; rather, such sanctions must be compensatory in nature or designed to coerce compliance. See In re Lehtinen, 564 F.3d at 1059; Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192, 1197-98 (9th Cir. 2003).

However, we disagree that the $2,685 in sanctions imposed here were designed to be punitive. To the contrary, the court here explicitly designed the sanctions imposed to reimburse Ms. Carlson (and derivatively her unsecured creditors) for the attorney's fees MaGee charged Carlson for his pre-confirmation services in her bankruptcy case. On this record, this was an appropriate measure for the imposition of compensatory sanctions. See generally In re Dyer, 322 F.3d at 1195 (noting that reimbursement of a party's attorney's fees commonly is an appropriate component of a compensatory civil sanctions award).

In essence, the bankruptcy court found that MaGee was not entitled to retain those fees because his improper conduct relating to the nondisclosure of the claims led to the revocation

17

of Ms. Carlson's discharge – the primary benefit a debtor typically seeks to obtain by proposing and completing a chapter 13 plan. MaGee has not challenged the bankruptcy court's finding of a causal link between his conduct and the revocation of Ms. Carlson's discharge, nor have we found anything in the record that would support such a challenge.[6] As a result, we reject MaGee's contention that the sanctions imposed were punitive in nature and hence improper.

Magee has asserted only one other distinct argument in his opening appeal brief.[7] MaGee contends that the bankruptcy court predetermined the issue of how and when he learned of the claims. The court's predetermination of this issue, MaGee reasons, is established by the language of the court's order to show cause, which refers both to MaGee's "knowing failure to disclose" the claims and to MaGee "being informed" of the claims. Order to Show Cause (Mar. 19, 2012) at pp. 1-2. According to MaGee, the so-called predetermination of this issue was both an abuse of

[6]In his reply brief on appeal, MaGee notes that the bankruptcy court ultimately reinstated Ms. Carlson's discharge, and he urges the panel to vacate the sanctions order on that basis. However, in reviewing the sanctions order, we are not permitted to consider documents and facts that were not before the bankruptcy court at or before the time it ruled. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077–78 (9th Cir. 1988).

[7]MaGee's opening brief also includes a section directly challenging the bankruptcy court's credibility findings. But we already have addressed at length the court's credibility findings in the course of our discussion of MaGee's argument regarding duty. Suffice it to say that nothing in MaGee's argument challenging the court's credibility findings persuades us to alter our analysis and conclusion upholding those findings.

18

discretion and a violation of his due process rights.

At its most fundamental level, MaGee's procedural due process argument requires us to consider whether MaGee had "the opportunity to be heard [on the sanctions issue] at a meaningful time and in a meaningful manner." See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The record establishes that MaGee had an abundance of opportunity to be heard on the sanctions issue and that the bankruptcy court carefully considered MaGee's presentation before it issued its final sanctions ruling.

More to the point, MaGee's predetermination argument is both factually and legally meritless. The court set and heard two days of live testimony in part to help it decide how and when MaGee learned of the claims. Indeed, this is precisely how the bankruptcy court itself later described its decision to hear two days of testimony as part of the show cause proceedings. See Order Denying Motion for Reconsideration (Oct. 3, 2012) at 3:2-9. Moreover, the key evidence on which the bankruptcy court relied in support of its finding that MaGee knew about the claims – Ms. Carlson's live testimony regarding her December 30, 2010 meeting with MaGee – was offered to the court as part of the two-day evidentiary hearing, which was held several months after the show cause order was issued.

Even if there existed a genuine factual basis for MaGee's predetermination argument, as a matter of law, the order to show cause was not a final order, and consequently, the bankruptcy court had the authority to alter any portion of its show cause ruling unless and until the final sanctions order was entered. See Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 465 (9th

19

Cir. 1989) ("Courts have inherent power to modify their interlocutory orders before entering a final judgment."); <u>see also</u> <u>Knutson v. Price (In re Price)</u>, 410 B.R. 51, 56 n.1 (Bankr. E.D. Cal. 2009) (bankruptcy court retained jurisdiction to change its interlocutory order unless appellate court granted leave for an interlocutory appeal).

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order imposing sanctions against MaGee and its order denying MaGee's motion for reconsideration.