## ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-20-1175-KTB |
| ANDREW LINTON, | Bk. No. 3:18-bk-30773 |
|     Former Alleged Debtor. | |
| ANDREW LINTON,<br>          Appellant, | |
| v. | **OPINION** |
| COLPO TALPA, LLC; 1429 GRANT<br>AVENUE, LLC; JERIES AZAR;<br>MUNIR SHAHIN,<br>          Appellees. | |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

APPEARANCES:
Anthony R. Flores of The Flores Firm argued for appellant;
Richard A. Lapping of Trodella & Lapping LLP argued for
appellees.

Before: KLEIN,[*] TAYLOR, and BRAND, Bankruptcy Judges.


KLEIN, Bankruptcy Judge:

In Italian, the name of appellee Colpo Talpa, LLC, means

Whack-a-Mole.[1]

---

[*] Hon. Christopher M. Klein, United States Bankruptcy Judge
for the Eastern District of California, sitting by designation.

[1] Definition - Whack-a-mole:

1. Literally, an arcade game [originally "Whac-a-
mole"] in which the player uses a small rubber mallet

(continued...)

The debtor in a dismissed involuntary petition tried to call time out to ask us to referee one attempted whack during an unfinished Whack-a-Mole game in which the stakes are fees, costs, and damages against petitioners under 11 U.S.C. § 303(i).[2] The bankruptcy court denied his request to join additional defendants.

Although play continued because instant replay timeouts are not automatic in federal litigation, the trial court's subsequent entry of final judgment ended the game and enables us to address the merits. We AFFIRM the decision declining to join parties.

We publish for three reasons. First, we clarify that a motion seeking a § 303(i) monetary award is a discrete "relevant proceeding" in which no order made within the ebb and flow of that proceeding is immediately appealable under 28 U.S.C. § 158(a)(1) before entry of final judgment under § 303(i). Second, the case illustrates the doctrine of cumulative finality according to which a Notice of Appeal of an interlocutory order becomes, in the absence of a grant of leave to appeal under

---

[1](...continued)
to hit robotic toy moles that pop up randomly in holes laid out across the surface of the machine.
2. By extension, a situation in which problems continue to arise faster than one is able to solve or cope with them, resulting in piecemeal, incomplete, or temporary results.

https://idioms.thefreedictionary.com/whackamole (last visited October 3, 2021).

[2] Except for citations to 28 U.S.C. § 158, "chapter" and "section" numbers refer to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" refers to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" refers to the Federal Rules of Civil Procedure.

2

§ 158(a)(3), effective upon entry of final judgment. And, third, we identify Civil Rule 54(b) as an authority for motions for reconsideration made before judgment is rendered.

**FACTS**

This appeal arises in a multi-forum Whack-a-Mole tournament revolving around the involuntary chapter 7 case of WB Coyle. It involves some twenty related bankruptcy cases, adversary proceedings, and appeals.[3] The same bankruptcy judge has presided

---

[3] We exercise our discretion to take judicial notice of records and dockets in the twenty related cases in the Coyle Saga. *Estate of Blue v. Cnty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997); *Mullis v. Bankr. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

Pertinent bankruptcy cases, all from the Northern District of California, include: *In re WB Coyle a/k/a William Bernard Coyle a/k/a W.B. Coyle*, No. 13-32412-HLB (involuntary chapter 7); *In re Innocenti, LLC*, No. 15-30690-HLB (chapter 7); *In re Bannam Place, LLC,* No. 16-30865-HLB (involuntary chapter 11); *In re Andrew Linton*, No. 18-30773-HLB (involuntary chapter 11).

Pertinent adversary proceedings, all from the Northern District of California, include: *Transition, LLC v. Coyle*, Adv. No. 14-03052; *744 Union St. TIC v. Coyle*, Adv. No. 14-03137; *SAMETC, LLC v. Coyle*, Adv. No. 14-03139; *Sollner v. Coyle*, Adv. No. 14-03140; *Gay v. Coyle*, Adv. No. 14-03141; *Transition LLC v. Coyle*, Adv. No. 14-03142; *Old Republic Nat'l Title Ins. Co. v. Coyle*, Adv. No. 14-03143; *Schoenmann v. Trifiletti*, Adv. No. 14-03144; *Schoenmann v. Bannam Place, LLC*, Adv. No. 14-03158; *Dissolution Props., LLC v. Sollner*, Adv. No. 15-03020; *Milgrom v. Coyle*, Adv. No 16-03025; *Linton v. Bannam Place, LLC*, Adv. No. 16-03082.

Appeals to the U.S. District Court include: *Pivot Pt. Partners, LLC, v. Innocenti, LLC*, No. 3:15-cv-04125-EMC (automatic stay); *Pivot Pt. Partners, LLC v. Schoenmann (In re Coyle)*, No. 4:15-cv-04126-YGR, 2016 WL 5673247 (N.D. Cal. Oct. 3, 2016) (preliminary injunction); *S.F. Citizens Against Eviction v. Innocenti, LLC*, No. 3:16-cv-01657-EMC (contempt); *Pivot Pt. Partners, LLC v. Schoenmann*, No. 4:17-cv-1680-YGR, 2017 WL

(continued...)

over most of them. And, the contestants have from time to time traded the roles of mole and mallet-wielder.[4]

The immediate bone of contention is a four-unit building that appellant Andrew Linton rented during the Coyle chapter 7 case and the trustee's avoidance action seeking to recover those premises.

The property, at 1429-1431 Grant Avenue and 80 Bannam Place in San Francisco ("Grant Avenue Property"), was transferred by Coyle prepetition to LLCs controlled by Coyle's brother-in-law.

Coyle's chapter 7 trustee filed an action to avoid the transfers and recover the Grant Avenue Property in November 2014.[5] In an obstructive maneuver, Coyle, acting for the LLC owners, leased the property to Linton in May 2015. The defendants in the avoidance action agreed in 2016 that Coyle's trustee could sell the Grant Avenue Property for a stated minimum price they thought too high to be realistic; they assumed the property would remain unsold and eventually be abandoned back to them. To their surprise, the trustee sold the property for the stated price.[6]

The new owner, 1429 Grant Avenue, LLC, sole member Jeries Azar, terminated Linton's lease and commenced an action in state

---

[3] (...continued) 4310760 (N.D. Cal. Sept. 28, 2017) (interlocutory appeal); *Flores v. Innocenti, LLC*, No. 3:18-cv-01750-EMC (contempt).

[4] The District Court has twice found it appropriate in appeals to opine that Coyle has a "history of fraudulently avoiding his creditors." *In re Coyle*, 2016 WL 5673247, at *9; *Pivot Pt. Partners, LLC*, 2017 WL 4310760, at *4 n.2 (same).

[5] *Schoenmann*, Adv. No. 14-03158.

[6] *In re Coyle,* No. 13-32412-HLB (Trustee's Report of Sale, Dkt. #366).

4

court against Linton and Coyle seeking, among other relief, to eject Linton and his subtenants from the premises.

On July 16, 2018, as trial was beginning in state court on the severed ejectment claim against Linton, Coyle triggered the automatic stay by filing an involuntary chapter 11 petition against Linton. Coyle's mother, paralegal Louisa Trifiletti, was the sole petitioning creditor, asserting a claim that was never proven to exist. Linton, who knew of the involuntary petition upon stay of the unlawful detainer trial, took no immediate umbrage.

Two months later, Colpo Talpa, LLC ("Colpo Talpa"), whose sole member Munir Shahin was allied with Azar, was formed, acquired a money judgment against Coyle that had been excepted from discharge under § 523(a)(2) and (4), and joined the involuntary petition as a petitioner per § 303(c). Colpo Talpa mistakenly assumed that the assigned judgment qualified it under § 303(c) to join as a petitioner and to participate in the case.

Linton thereupon counterattacked and sought dismissal, asserting the involuntary petition was filed in bad faith.

The bankruptcy court dismissed both petitioners on Linton's motion – Trifiletti for failure to prosecute and Colpo Talpa as ineligible for having acquired a claim for the purpose of joining the petition – and then dismissed the involuntary case.

Linton moved for fees, costs, and damages under § 303(i), which follows when an involuntary petition does not result in an order for relief. This appeal arises in that § 303(i) proceeding.

The court initially ruled that Colpo Talpa acted in "bad faith," which determination triggered actual and punitive damages

5

under § 303(i)(2). Linton then moved to hold non-petitioners 1429 Grant Avenue LLC, Jeries Azar, and Munir Shahin jointly liable with petitioner Colpo Talpa on an alter ego theory.

As a matter of procedure, Linton's "alter ego" motion was the equivalent of a motion to join parties under Civil Rule 21 that was no different than the same motion in an adversary proceeding or civil action.

This appeal is from the June 11, 2020, order denying the alter ego motion. The court ruled on alternative grounds: lack of personal jurisdiction; and failure of proof of alter ego status.[7]

As part of its rationale for denying the alter ego motion, the court explained that its ruling that Colpo Talpa had acted in "bad faith" had been incorrect and needed to be vacated. Linton filed the Notice of Appeal now before us.

The court thereafter granted Colpo Talpa's motion to reconsider and vacate its "bad faith" determination as having been based on an erroneous factual premise. Having closed the door to § 303(i)(2) damages, the court began to proceed to determine fees and costs under § 303(i)(1) only.

The court eventually decided the § 303(i)(1) issues on March

---

[7] The relevant portion of the oral ruling states:

> So, ... even if I can get past the jurisdictional question, even [if] I can overlook the fact that ... the reason that we're here today, which is the finding that [Colpo Talpa] acted in bad faith which led to this motion asking me to deem these other entities and individuals alter egos of the company that ostensibly acted in bad faith was wrong. I still don't think I have enough here to make an alter ego finding. And that's a really extreme remedy.

June 11, 2020 Hrg. Tr. 16:19-27.

18, 2021.[8] It ruled that § 303(i)(1) entitled Linton to fees and costs of $172,965.93 against both petitioners Trifiletti and Colpo Talpa but that judgment would be against only Colpo Talpa because Linton did not serve his motion on Trifiletti. As to Linton's non-petitioner targets, the court denied requests to impose sanctions under Rule 9011 and § 105 and under the court's inherent authority, reasoning that Colpo Talpa had not acted in bad faith. There was no appeal of that order or the ensuing money judgment.[9]

Although the fact-intensive Coyle Saga is more colorful, the essential point for our purposes is that the bankruptcy judge was mindful of that history when she declined to entertain actual and punitive damages against Colpo Talpa under § 303(i)(2), declined to enter sanctions against non-petitioners on any theory, and awarded fees and costs totaling $172,965.93 under § 303(i)(1). As that judgment was not appealed, we need not delve deeper.

## JURISDICTION

We have an independent duty to assure ourselves that we have jurisdiction. We are entitled to raise the issue sua sponte and address it de novo. *E.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Cunning v. Rucker (In re Rucker)*, 570 F.3d 1155, 1159 n.2 (9th Cir. 2009); *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999).

---

[8] Order Granting in Part and Denying in Part Alleged Debtor's Motion and Request for Damages, Dkt. #163 (Mar. 18, 2021).

[9] Judgment After Order on Alleged Debtor's Motion and Request for Damages, Dkt. #166 (April 5, 2021).

Linton's Notice of Appeal asserted jurisdiction under § 158(a)(1) on the incorrect theory the trial court's order declining to impose alter ego liability on non-petitioners is an immediately appealable final order. At the time, there was no finality, and our jurisdiction depended upon whether we chose sua sponte to grant leave to appeal under § 158(a)(3).

The trial court's docket reveals that the required final judgment in the overall discrete proceeding has since been entered. As we shall explain, we now have jurisdiction under § 158(a)(1) under the doctrine of cumulative finality.

**ISSUES**

1. Is a motion for fees, costs, and damages under § 303(i) in a failed involuntary case a discrete proceeding for purposes of determining immediate appealability in bankruptcy?

2. Was the order denying the motion to join parties on an alter ego theory in the § 303(i) proceeding final for purposes of § 158(a)(1) at the time it was entered?

3. If not final when entered, did the order denying joinder become final by virtue of the doctrine of cumulative finality?

4. What is the procedural authority for pre-judgment motions for reconsideration?

5. Did the trial court err by declining to join parties?

**STANDARDS OF REVIEW**

Whether the order on appeal is a final order over which we have jurisdiction under § 158(a)(1) is a question of law we assess de novo. *E.g.*, *Jue v. Liu (In re Liu)*, 611 B.R. 864, 870 (9th Cir. BAP 2020).

The cumulative finality doctrine and construction of rules

8

of procedure are questions of law assessed de novo.

Whether party joinder is required is a fact-intensive question we review for abuse of discretion.

## ANALYSIS

Appellant Linton wants us to override the denial of his motion to hold three non-petitioners jointly liable for attorney's fees, costs, and damages under § 303(i). Although Linton says that the order denying his motion to add non-petitioners as parties was immediately appealable as a final order pursuant to § 158(a)(1), it was not final when issued because it did not resolve a discrete proceeding. Nor was leave to appeal under § 158(a)(3) appropriate because the joinder calculus was too discretionary, too incomplete, and too fact-intensive to warrant short-circuiting the litigation process.

## I

### Need for Finality

Our appellate jurisdiction under § 158(a)(1) depends upon whether the order on appeal is final. In this context, the terms "final" and "immediately appealable" are functionally synonymous.

### A

### Test for Finality

Two recent Supreme Court cases have explained that bankruptcy "contested matters" governed by Rule 9014 do not always fit the mold of ordinary federal civil litigation when it comes to finality and jurisdiction immediately to appeal an order. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501-02 (2015).

9

Rather, one must discern the "relevant proceeding" in which the court finally disposes of discrete issues. *Ritzen*, 140 S. Ct. at 588; *Bullard*, 575 U.S. at 501-02; *Liu*, 611 B.R. at 871.

As we detailed in *Liu*, the Supreme Court's *Bullard-Ritzen* decisions confirmed the continued vitality of the Ninth Circuit's "pragmatic" or "flexible" approach to finality in bankruptcy. *See Liu*, 611 B.R. at 871-72 & n.7.

Under the Ninth Circuit approach, a bankruptcy court's order is final for purposes of immediate appeal under § 158(a)(1) if: (1) it fully and finally determined the discrete issue or issues it presented; and (2) the resolution of discrete issues seriously affected substantive rights. *Liu*, 611 B.R. at 870-71, *citing Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1126 (9th Cir. 2016), *and SS Farms, LLC v. Sharp (In re SK Foods, L.P.)*, 676 F.3d 798, 802 (9th Cir. 2012).

Legal scholars agree. *E.g.,* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3926.2 (3d ed. 2021) ("Bankruptcy Appeals - Flexible Finality") ("Wright, Miller & Cooper").

**B**

**The *Bullard-Ritzen* "Relevant Proceeding"**

*Bullard* and *Ritzen* teach that discerning finality for purposes of immediate appeal requires identifying the discrete "relevant proceeding" that fully and finally determines and affects substantive rights within the umbrella of a bankruptcy case. One must consider the statute and the structure of the bankruptcy case as implemented by the rules of procedure. *Ritzen*, 140 S. Ct. at 586-87; *Bullard*, 575 U.S. at 501-02.

### Statutory Clues for Relevant Proceeding

Bankruptcy Code § 303(i) leaves no mystery about the *Bullard-Ritzen* discrete "relevant proceeding" regarding fees, costs, and damages in a failed involuntary case.

A § 303(i) proceeding arises once an involuntary case is dismissed. If an involuntary case is dismissed without the consent of debtor and all petitioners and if the debtor does not waive the right to judgment, then § 303(i) provides that the court "may grant judgment" for fees and costs. 11 U.S.C. § 303(i)(1).[10] As to any person who filed the petition in "bad faith," § 303(i) also authorizes the judgment to include actual and punitive damages. 11 U.S.C. § 303(i)(2).

There are two facets to a § 303(i) proceeding. First, § 303(i)(1) is a fee-shifting provision that establishes a rebuttable presumption in favor of an award of attorney's fees. *Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Devs., Inc. (In re S. Cal. Sunbelt Devs., Inc.)*, 608 F.3d 456, 462 (9th Cir. 2010)

---

[10] The § 303(i) discrete proceeding provision is:

    (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment —
    (1) against the petitioners and in favor of the debtor for —
        (A) costs; or
        (B) a reasonable attorney's fee; or
    (2) against any petitioner that filed the petition in bad faith, for —
        (A) any damages proximately caused by such filing; or
        (B) punitive damages.

11 U.S.C. § 303(i).

("*SCSD*").

Under the second facet, § 303(i)(2) is a damages provision permitting an award of actual or punitive damages on the sole precondition that there is a showing of bad faith. Punitive damages may be awarded under § 303(i)(2)(B) even without an actual damages award under § 303(i)(2)(A). *SCSD*, 608 F.3d at 465.

A § 303(i) proceeding begins with a motion following dismissal of the case without consent of all petitioners and the debtor and without a debtor's waiver of the "right to judgment."

The end of a § 303(i) proceeding is the "judgment" awarding fees, costs, and – perhaps – actual and punitive damages.

Thus, as a proceeding prescribed by statute with a specified beginning and specified end, the § 303(i) proceeding for fees, costs, and damages constitutes a "discrete" relevant proceeding for purposes of *Bullard-Ritzen* finality analysis.

**2**

**Clues from Structure of "Contested Matter" Rules**

Since Federal Rule of Bankruptcy Procedure 7001 does not require an adversary proceeding to determine issues under § 303(i), such a proceeding is a Rule 9014 "contested matter."

With the exception of pleadings, "contested matter" procedure under Rule 9014 generally mirrors adversary proceeding procedure by incorporating many adversary proceeding rules. The discovery rules apply, and evidence is taken in the same manner as in an adversary proceeding. *See* Fed. R. Bankr. P. 9014(d). The court makes findings of fact and conclusions of law. Fed. R. Civ. P. 52, *incorporated by* Fed. R. Bankr. P. 7052 & 9014(c). The judgment, default, and summary judgment rules apply, as do rules

12

for post-judgment motions. Fed. R. Bankr. P. 9014(c).[11]

While such procedures may be necessary for the existence of a "relevant" proceeding, for purposes of finality under the *Bullard-Ritzen* analysis, they are not sufficient.

All contested matters culminate in orders, but not all orders qualify as "judgments." Rule 9001(7) specifies that a "judgment" is an order that is appealable. Fed. R. Bankr. P. 9001(7).

The term "appealable" in Rule 9001(7) equates with immediately appealable under § 158(a)(1).

The test for § 158(a)(1) appealability requires the order to: (1) fully and finally determine the discrete issue: and (2) resolve and seriously affect substantive rights. *Perl*, 811 F.3d at 1126; *Liu*, 611 B.R. at 870; 16 Wright, Miller & Cooper § 3926.2.

In other words, if an order entered in a Rule 9014 contested matter fully and finally determines the discrete issue in a manner that resolves and seriously affects substantive rights, it is a Rule 9001(7) "judgment" that is immediately appealable under § 158(a)(1). Otherwise, it is interlocutory and not immediately appealable without leave to appeal under § 158(a)(3).

## II

### Finality Status of Appellant's Motion

This appeal is from denial of a motion to join defendants in

---

[11] As to the several adversary proceeding rules that do not automatically apply in contested matters, the court has express authority to make them applicable: "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c).

13

the § 303(i) proceeding. The contested matter rules incorporate into all contested matters Civil Rule 21 regarding Misjoinder and Non-Joinder of parties. Fed. R. Civ. P. 21, *incorporated by* Fed. R. Bankr. P. 7021 & 9014(c).[12]

Linton's motion to add 1429 Grant Avenue LLC, Jeries Azar, and Munir Shahin as defendants in the § 303(i) proceeding must be construed as a motion under Civil Rule 21 to add parties.

The contested matter rules make Rule 7021 applicable within all contested matters. Fed. R. Bankr. P. 9014(c). Hence, a Civil Rule 21 motion is a subsidiary component of the overall contested matter in which it arises.

The fact that the court and the parties may have assumed Linton's Civil Rule 21 motion to join parties was a routine separate contested matter without considering its relation to the overall § 303(i) contested matter does not transmogrify it into a separate discrete relevant proceeding for purposes of immediate appeal under § 158(a)(1).

Rather, contested matters may be nested within contested matters. While procedural precision is always a desideratum, trial courts need not tie themselves in knots to identify whether a contested matter is nested within another contested matter.

---

[12] Civil Rule 21 provides:

Misjoinder and Non-Joinder of Parties
    Misjoinder of parties is not a ground for dismissing an action. *On motion or on its own, the court may at any time, on just terms, add or drop a party.* The court may also sever any claim against a party.

Fed. R. Civ. P. 21, *incorporated by* Fed. R. Bankr. P. 7021 & 9014(c) (emphasis supplied).

14

That is a task for the appellate court. Hence, all appealed contested matter orders are reviewed for § 158(a)(1) finality.[13] If not final, the order is not a "judgment" for purposes of Rule 9001(7).

In an adversary proceeding, an order on a Civil Rule 21 motion to add party defendants on an alter ego theory would be interlocutory. 15B Wright, Miller & Cooper § 3914.18 ("Finality - Orders Prior to Trial - Party Joinder").

A motion that is an interlocutory matter if made within an adversary proceeding should not have different status in a Rule 9014 contested matter that nests within a larger contested matter that comprises a *Bullard-Ritzen* discrete relevant proceeding.

## III

### Cumulative Finality

The doctrine of cumulative finality permits appellate courts to recognize maturation to finality if a premature appeal is followed by final disposition of the case, even if no new notice of appeal is filed. 15A Wright, Miller & Cooper § 3914.9 ("Finality – Orders Prior to Trial – Cumulative Finality").

Cumulative finality has been law of the Ninth Circuit since 1980. *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 680-81 (9th Cir. 1980), *adopting Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1231 (5th Cir. 1973) (28 U.S.C. § 1291).

If an order is not final, then appeal of the issue ordinarily will be dismissed unless leave to appeal is granted.

---

[13] Other examples of nested contested matter motions include Civil Rule 37 discovery motions and Civil Rule 52(b) motions to revise findings.

15

Upon finality, a new notice of appeal may be filed to obtain review of the challenged order.[14]

Subsequent events, however, can save an interlocutory appeal from dismissal. *E.g.*, *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 901 (9th Cir. 2005); *Anderson*, 630 F.2d at 681. That is the case here. The entry of the final § 303(i) judgment after oral argument rescued this prematurely filed appeal from dismissal.

Before that § 303(i) judgment was entered, we lacked § 158(a)(1) final order jurisdiction and lacked § 158(a)(3) jurisdiction over the appeal from the non-final order denying the motion to join parties because we had not granted leave to appeal and were disinclined sua sponte to grant such leave under Rule 8004(d). But, once the bankruptcy court entered its § 303(i) judgment, cumulative finality set in to rescue this appeal from dismissal by affording us § 158(a)(1) jurisdiction over all orders entered in the discrete relevant proceeding. Linton's notice of appeal challenged only the denial of the Civil Rule 21 motion to join parties. As Linton did not appeal the § 303(i) judgment, no other ruling by the bankruptcy court arising from the § 303(i) relevant proceeding is before us.

Accordingly, we turn to the merits of Linton's appeal.

---

[14] If the finality status of an order is uncertain, the best course is to file a Notice of Appeal and a Motion for Leave to Appeal under Rule 8004 in case it is concluded it is not a final order. *Liu*, 611 B.R. at 872-73, *citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003); *Ryther v. Lumber Prods., Inc. (In re Ryther)*, 799 F.2d 1412, 1414 (9th Cir. 1986).

16

**IV**

**Civil Rule 54(b) and Reconsideration**

Linton perceives error in the denial of his Civil Rule 21 motion to join parties. Although he makes numerous assertions of incorrect standards, distilling his unfocused and confusing brief yields two basic arguments. First, he argues the court should not have based its ruling on its doubts about the correctness of its prior "bad faith" determination regarding Colpo Talpa because that determination was based on what he thinks was a judicial admission of fact binding on the court. Second, he argues that his Notice of Appeal from the order denying his alter ego motion, by virtue of the doctrine of exclusive appellate jurisdiction, stripped the court of authority to vacate the "bad faith" determination. Neither argument is correct.

Both arguments misapprehend basic finality concepts and the latitude of action available to trial courts before final judgment is rendered.

**A**

**Misunderstanding Reconsideration**

Here we encounter common misunderstandings about "reconsideration" in federal civil and bankruptcy practice.

Civil Rule 54(b) provides a key to assessing finality in situations involving multiple parties or multiple claims. It applies equally to contested matters and adversary proceedings.

Everybody in this case seems to have spun off onto irrelevant tangents regarding the reconsideration of the "bad faith" issue that was embedded in the joinder dispute.

Linton focused on the problem of reconsideration because the

court cited its intention to revisit its prior ruling that Colpo Talpa had joined the petition in "bad faith" as one reason for denying the Civil Rule 21 motion. That "bad faith" ruling is what had opened the door to the § 303(i)(2) actual damages and punitive damages provisions that made joinder of alter ego deep pockets attractive to Linton.

The procedural problems went from bad to worse. Colpo Talpa subsequently filed a motion for reconsideration invoking Rule 9024. The court analyzed the motion under Rule 9024. The appellant, assuming that Rule 9024 applied, argued invalidity based on the doctrine of exclusive appellate jurisdiction. They were all wrong.

**1**

**Reconsideration as a Generic Concept**

The incorrect focus was on Rule 9024, which incorporates Civil Rule 60. Fed. R. Bankr. P. 9024, *incorporating* Fed. R. Civ. P. 60. Rule 9024 applies only *after* entry of judgment. The problem is that Rule 9024 does not apply, as was the case here, *before* entry of judgment in the *Bullard-Ritzen* discrete relevant proceeding.

"Reconsideration" is a multi-faceted generic concept as to which confusion reigns. *See* Hon. Michael B. Kaplan & Rebecca A. Earl, Reconsidering Reconsideration, 38 Am. Bankr. Inst. J. 22 (Apr. 2019).

Rules 9023 and 9024 permit motions for reconsideration in bankruptcy after judgment is entered, but have their own specific standards. Fed. R. Civ. P. 59-60, *as incorporated by* Fed. R. Bankr. P. 9023-9024. Likewise, Civil Rules 59 and 60 have the

18

same effect in district court litigation.

But numerous occasions for reconsideration arise in federal trial courts before judgment is entered. Reconsideration in such pre-judgment scenarios is not constrained by the standards governing post-judgment motions.

For example, implicit in Civil Rule 16 is authority to revise and reconsider orders as more information emerges and positions of parties evolve in the course of managing litigation on the road to trial. Fed. R. Civ. P. 16, *incorporated by* Fed. R. Bankr. P. 7016.

Direct authority for pre-judgment reconsideration is found at Civil Rule 54(b), which applies in adversary proceedings, contested matters, and contested involuntary petitions. When an order adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties in a relevant discrete proceeding, it does not end the action as to any party or any issue and may be revised "at any time" before entry of a judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed. R. Civ. P. 54(b), *incorporated by* Fed. R. Bankr. P. 1018, 7054(a), & 9014(c).[15]

---

[15] Civil Rule 54(b) provides:

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. *Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or*
(continued...)

19

Determining whether Rule 9024 or Civil Rule 54(b) applies to any given "contested matter" requires an additional layer of analysis. The point may be subtle, but it matters. An order in a contested matter is not a "judgment" unless it is immediately appealable under § 158(a)(1) or (2). Fed. R. Bankr. P. 9001(7) ("'Judgment' means any appealable order.").

Otherwise stated, every contested matter ends with an order, but not every contested matter order is a Rule 9001(7) "judgment."

In order to be an appealable order that qualifies as a Rule 9001(7) "judgment," it must be final and immediately appealable under § 158(a)(1). Finality is measured by whether: (1) the order fully and finally determined the discrete issue or issues it presented; and (2) the resolved issues seriously affected substantive rights. *Liu*, 611 B.R. at 870-71.

**2**

**Role of Civil Rule 54(b) Before Judgment**

The fact that Civil Rule 54(b) permits orders to be "revised at any time" before entry of a final order without specifying conditions is crucial to understanding the extent to which contested matter motions under the Bankruptcy Rules fit the mold

---

[15](...continued)
*the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

Fed. R. Civ. P. 54(b), *incorporated by* Fed. R. Bankr. P. 7054(a) & 9014(c) (emphasis supplied).

of ordinary civil litigation.[16] The trial court may revise non-final orders "at any time" before entry of final judgment either sua sponte or on a party's motion to reconsider. *See Hyan v. Hummer*, 825 F.3d 1043, 1046-47 (9th Cir. 2016).

To be sure, a party asking a judge to reconsider a ruling under Civil Rule 54(b) before entry of final judgment faces the challenge of persuading the judge to do so. The trial court version of the law of the case doctrine permits a trial judge to decline with words to the effect of "I have ruled - save your argument for the appeal." Nevertheless, fair-minded trial judges committed to achieving correct results are open to being persuaded that better information and fuller consideration may warrant revising a ruling. 18B Wright, Miller & Cooper § 4478.1 ("Law of the Case - Trial Courts").

The bankruptcy court was free to change its mind about its "bad faith" determination at any time before entry of its § 303(i) judgment. No particular procedure is prescribed for acting under the "at any time" clause of Civil Rule 54(b) to revise a ruling. The court could have acted sua sponte. Or, as here, it could have relied on a party to make a formal motion backed by evidence so the court could be confident of the foundation for the revision.

**B**

**Mistaken Application of Post-Judgment Rules**

Misunderstanding of pre-judgment reconsideration also

---

[16] It bears repetition that Civil Rule 54 is incorporated by Rules 7054(a), 9014(c), and 1018 for adversary proceedings, contested matters, and contested involuntary proceedings.

21

underlies Linton's fallacious argument that his Notice of Appeal deprived the court of jurisdiction to entertain Colpo Talpa's motion for reconsideration.[17]

The general rule that a notice of appeal from a final order transfers jurisdiction from the trial court to the appellate court does not apply when the order in question is interlocutory, not final. *Rains*, 428 F.3d at 903. Thus, a notice of appeal from an interlocutory order does not deprive the trial court of jurisdiction to proceed to final judgment. *Rains*, 428 F.3d at 903-04.

Linton's false premises are, first, that a final judgment was entered on his Civil Rule 21 motion and, second, that Rules 9023 and 9024 are the sole bases for reconsideration motions in bankruptcy. Fed. R. Bankr. P. 9023-9024, *incorporating* Fed. R. Civ. P. 59-60. Not so.

Civil Rule 54(b) provided authority for reconsideration in this instance because neither the court's "bad faith" ruling nor its denial of Linton's Civil Rule 21 motion qualified as a Rule 9001(7) "judgment." Both orders remained subject to revision "at any time" until the bankruptcy court entered its final § 303(i) judgment.

It is of no procedural consequence that Colpo Talpa bungled when it incorrectly invoked Rule 9024 to request reconsideration of the "bad faith" ruling. Civil Rule 54(b) is unambiguously the

---

[17] Appellant's Opening Br., at 10 ("The court's order granting [Colpo Talpa's] Motion for Relief is void and of no effect because the trial Court has no jurisdiction to enter an order under Rule 60(b) if a notice of appeal has been filed. *Smith v. Lujan*, 588 F.2d 1304-1307 (9th Cir. 1979).")

governing procedural authority. Although the trial court unnecessarily labored under the incorrect assumption that Rule 9024 governed, any theoretical error would have been harmless because the outcome was consistent with Civil Rule 54(b), for which the standards are much less stringent.

In the § 303(i)(1) proceeding, as a matter of law, the parties were "all petitioners"; i.e. Louisa Trifiletti and Colpo Talpa. Also as a matter of law, the claims were fees, costs, and (for those who filed in bad faith) damages. If Linton's motion to add parties under Civil Rule 21 had been granted, then the joined parties would also have been exposed to such awards.

It follows under Civil Rule 54(b) that every order made in the § 303(i) proceeding before entry of a judgment adjudicating fees, costs, and damages as liabilities of Louisa Trifiletti and Colpo Talpa, or any other persons, was subject to revision "at any time" before entry of such a judgment.

## C

## Civil Rule 54(b) and Finality

An order that remains subject to revision "at any time" before entry of judgment flunks the test for finality: (1) it does not fully and finally determine the discrete issue or issues it presented; and (2) the discrete issues determined cannot resolve and seriously affect substantive rights before entry of the § 303(i) judgment. *Liu*, 611 B.R. at 870-71. A premature Notice of Appeal does not become effective until either leave to appeal is granted or a final order is entered. *See Rains*, 428 F.3d at 903-04; *Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 687–88 (9th Cir. BAP 2010).

23

As a consequence, Linton's Notice of Appeal did not become effective until the court entered its § 303(i) judgment.

## V

## Denial of Linton's Civil Rule 21 Motion to Join Parties

Now that cumulative finality affords us § 158(a)(1) jurisdiction, we are able to review whether the bankruptcy court abused its discretion when it denied Linton's Civil Rule 21 motion to join non-petitioners as alter egos of Colpo Talpa.

Regardless of whether the court has discretion to join non-petitioners directly as defendants in a § 303(i) action, non-petitioners can be exposed to the equivalent of § 303(i) awards by way of inherent power theories.

The Ninth Circuit has affirmed a bankruptcy court's use of inherent powers to impose on non-petitioners liability for § 303(i) costs and fees incurred in obtaining dismissal of involuntary petitions. *SCSD*, 608 F.3d at 466-67.[18]

Similarly, the Ninth Circuit has held that § 303(i) liabilities may be allocated unevenly among petitioners and that common-law doctrines of joint and several liability do not limit the bankruptcy court's discretion to apportion § 303(i) awards. *Sofris v. Maple-Whitworth, Inc. (In re Maple-Whitworth, Inc.)*, 556 F.3d 742, 745-46 (9th Cir. 2009).

---

[18] In *SCSD* the Ninth Circuit approved joint and several liability imposed on non-petitioners for § 303(i) fees and costs under the bankruptcy court's inherent authority, but it disapproved such liability for fees and costs incurred in post-dismissal litigation. *SCSD*, 608 F.3d at 466-67. Whether that latter holding retains vitality after *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc) (11 U.S.C. § 362(k)), is not certain.

24

While *Maple-Whitworth*'s negative view of common-law theories may have left tea leaves in the bottom of the cup regarding other common-law theories in § 303(i), neither it nor *SCSD* tells us whether joint and several liability may be imposed on non-petitioners on a common-law basis – such as alter ego analysis – other than inherent authority.

Although that question is now before us by virtue of the doctrine of cumulative finality, we need not decide it.

At the time the bankruptcy court denied Linton's Civil Rule 21 motion, it ruled that the three non-petitioner targets under the alter ego theory had not been correctly served and, in the alternative, even if they were served, that Linton's evidence did not suffice to carry his burden of proof on alter ego liability.[19] We agree with the bankruptcy court on both counts.

Later, when it made its final award under § 303(i), the court reiterated the reasons for denying the motion to join parties, which is the subject of this appeal. Then, it proceeded to reject Linton's claims against the same three non-petitioners on theories sounding in Rule 9011, § 105 civil contempt, and inherent authority to sanction "bad faith" or "willful misconduct." It concluded that, once again service had not been effected and then ruled, theory-by-theory, that Linton had failed to carry the various burdens of proof associated with those

---

[19] The court ruled: "I still don't think I have enough here to make an alter ego finding. And that's a really extreme remedy." *Supra* note 7.

25

theories.[20]

The court explained it had determined Colpo Talpa did not join the involuntary petition in bad faith within the meaning of § 303(i)(2). As to the non-petitioners whom Linton claimed had orchestrated the Colpo Talpa filing, the court was not persuaded they had orchestrated anything and noted that it would be a contradiction to find bad faith for causing Colpo Talpa to perform acts that were determined not to have been in bad faith.[21]

We assume, without deciding, that the bankruptcy court had discretion to grant the motion on the alter ego theory.

Reviewing the record, we perceive no clear error in factual findings, no misapplication of the correct legal standard, and no abuse of discretion in the court's assessment that there was not evidence sufficient to warrant an alter ego finding.

---

[20] Order Granting in Part and Denying in Part Alleged Debtor's Motion and Request for Damages, at pp 15-21 (March 18, 2021) Dkt. #163.

[21] The court reasoned:

> Mr. Linton argues that Mr. Azar, Mr. Shahin, and 1429 acted in bad faith by orchestrating [Colpo Talpa's] joinder in the involuntary petition. He ignores, however, the court's prior determination that [Colpo Talpa] did not file that petition in bad faith. The court does not necessarily agree that Mr. Azar, Mr. Shahin, and/or 1429 "orchestrated" anything, but assuming they did, it would make very little sense for the court to find Mr. Azar, Mr. Shahin, and 1429 to have acted in bad faith for causing [Colpo Talpa] to perform acts that the court has expressly found not to have been carried out in bad faith.

Dkt. #163, *supra* note 19, at pp. 20-21 (footnote omitted).

26

**CONCLUSION**

The order on appeal denying the motion to join non-petitioners as defendants was entered in the midst of a *Bullard-Ritzen* discrete § 303(i) proceeding for fees, costs, and damages in a failed involuntary bankruptcy case. Like the "bad faith" determination, the order denying the motion may, under Civil Rule 54(b), be revised "at any time" before entry of judgment in the § 303(i) action. Hence, the order on appeal was not final when entered. But, the order became final and eligible for appeal under § 158(a)(1) upon entry of judgment under § 303(i).

Upon review of the order denying the motion to join non-petitioners as parties, and discerning no error, we AFFIRM.

27